**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **MAURICE ANTONIO BROWN,**<br>                    **Plaintiff,**<br><br>vs.<br><br>**REALPAGE, INC., doing business as LEASINGDESK SCREENING and GENUINE DATA SERVICES, LLC,**<br>                    **Defendants.** | Case Number: _____<br><br>**Jury Trial Demanded** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, MAURICE ANTONIO BROWN, by and through his undersigned Counsel, alleges the following against Defendants REALPAGE, INC., doing business as LEASINGDESK SCREENING and GENUINE DATA SERVICES, LLC:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§1681a–x and the common law tort of defamation.

2. The FCRA requires that companies like the Defendants—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. §1681.

3. Defendants failed to treat these obligations accordingly, and despite knowing that their underlying data and the matching algorithms that selected records for inclusion into consumer

reports had serious deficiencies, they continued to sell reports anyway to the detriment of consumers like Plaintiff.

4. This case arises because the Defendants routinely violate the accuracy requirement of the FCRA by reporting as belonging to Plaintiff criminal-record information about a different consumer that has the same name. The criminal-record information, however, does not belong to Plaintiff.

5. Such misreporting, which results from the failure to use reasonable procedures designed to ensure the information Defendants report is as accurate as possible, results in a violation of the FCRA's accuracy requirement.

6. Consumer reporting agencies ("CRAs") such as the Defendants that create consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. Defendants' practices harm consumers seeking housing by prejudicing prospective landlords with inaccurate adverse information.

7. Plaintiff brings claims under §1681e(b) against the Defendants because they reported a criminal record about Plaintiff for which did not belong to Plaintiff.

8. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how the CRA Defendants have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. The Defendants have been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

**JURISDICTION AND VENUE**

9. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p and 28 U.S.C. §1331.

10. Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

**PARTIES**

11. Plaintiff Maurice Antonio Brown is a natural person and a resident of the State of Missouri. He is a "consumer" as defined by 15 U.S.C. §1681a(c).

12. Defendant RealPage, Inc. is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) and it disburses consumer reports to third parties for monetary compensation. It regularly conducts business in the State of Missouri in its own name and as "LeasingDesk Screening." RealPage maintains a principal place of business in the State of Texas.

13. Genuine Data Services, LLC. is a consumer-reporting agency as defined at 15 U.S.C. §1681a(f). It maintains an extensive database of public records regarding consumers. It then sells consumer reports generated from the database and furnishes these consumer reports to Defendant, RealPage, Inc., doing business as LeasingDesk, who then sells them to landlords to use in deciding whether to rent to a prospective tenant. These reports include the prospective tenant's criminal history, sex offender status, landlord tenant court records and credit information, among other categories of sensitive, personal information.

## FACTUAL ALLEGATIONS

*Section 1681e(b) of The Fair Credit Reporting Act Require Substantive Investigations*

14. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

16. As the Fourth Circuit explained in *Johnson v. MBNA*, the seminal case regarding CRAs' duties to investigate:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

4

17. Further, as the CRA Defendants are aware, courts have held that even though the term "investigation" is not used in §1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to §1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

18. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### *RealPage Fails to Accurately Report Consumer Information*

19. In November, 2020 Plaintiff applied to rent an apartment at O'Fallon Lakes in O'Fallon, Missouri.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

5

20. As part of the application process, Plaintiff was required to undergo a background check.

21. Plaintiff's landlord ordered Plaintiff's background report from Defendant LeasingDesk on or around November 13, 2020.

22. When Defendant LeasingDesk received the request for the consumer report from O'Fallon Lakes, it requested Plaintiff's background report from Defendant Genuine Data.

23. Through investigation, Plaintiff was able to determine that Genuine Data had provided a report to Defendant LeasingDesk. This report indicated that Plaintiff was a sex offender based on prior convictions for "sexual abuse of children" and "possession of child pornography" and had been registered as such in the State of Pennsylvania.

24. All of this information was false. Plaintiff is not nor has he ever been a registered sex offender, nor has he ever been convicted of the crimes listed in the preceding paragraph.

25. The Defendants' publication of reports and public record information which were ultimately transmitted to O'Fallon Lakes would not have occurred but for the failure of Defendants to follow reasonable procedures to ensure the maximum possible accuracy of the information in Plaintiff's consumer report as required by 15 U.S.C. §1681e(b).

26. Not surprisingly, the landlord refused to rent to Plaintiff based on the contents of the report Defendants provided the landlord.

27. The inaccurate report caused Plaintiff substantial hardship, and Plaintiff suffered financial loss, humiliation, loss of sleep, anxiety and embarrassment as a result of Defendants' violations of the law.

28. CRAs such as Defendants deal in volume and use standardized procedures to gather information and attribute it to individuals. They therefore use processes designed to be cost-effective rather than accurate, because ensuring accuracy often costs Defendants additional money.

29. Defendants failed to follow reasonable procedures to assure the maximum possible accuracy regarding the information it sold about the Plaintiff.

30. Defendants failed to use the *full* identifying information to match the records of sex offender "Maurice A. Brown" to Plaintiff, Maurice Antonio Brown. Defendants mixed the files of Plaintiff and another "Maurice A. Brown," failing to match the full middle name and date of birth. In addition, the criminal record that was reported within Plaintiff's background report was regarding an individual with criminal records in Pennsylvania which Plaintiff has no connection, either criminal nor any other information Defendants reported.

31. RealPage's standard practice is to use only partial matching and not full identifying information in the preparation of a consumer's report.

32. RealPage did not require a match to Plaintiff's full identifying information such as the Plaintiff's full first, middle and last name; full street address, year of birth, social security number or any generational designation prior to preparing the report regarding Plaintiff.

33. Genuine Data fared no better, as it provided to RealPage a consumer report inaccurately linking the sex-offender records and criminal history of a different Maurice Brown to Plaintiff. Because Section 1681e(b) applies to each separate communication of this information, both Defendants were independently responsible to use reasonable procedures designed to ensure the maximum possible accuracy of the information they were reporting about Plaintiff.

34. Defendants do not use a reasonable number of identifiers that would prevent the information belonging to one consumer from appearing in another consumer's background report.

35. Defendants' reporting of the inaccurate information concerning Plaintiff was not accidental nor a result of simple negligence but instead a result of deliberate disregard and flawed policies and procedures.

### *Plaintiff Suffered Actual Harm*

36. As a result of Defendants' reporting of the inaccurate information about Plaintiff he has suffered damages, including, but not limited to:

   a. Stress associated with the loss of housing;

   b. Loss of time attempting to cure the error;

   c. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

   d. Stress associated with attempting to resolve this matter in the last year.

### *Defendants' Violations were Willful*

37. The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

38. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

39. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of §1681e(b) has not changed.  The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

### COUNT ONE – VIOLATION OF FAIR CREDIT REPORT ACT
### 15 U.S.C. §1681e(b)

40. Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

41. Defendants Genuine Data and LeasingDesk failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the consumer report that each sold regarding the Plaintiff.

42. Defendants used flawed matching methodology and failed to consider the complete set of identifying information at their disposal when linking the sex-offender Maurice Brown's records with Plaintiff Maurice Brown.

43. As a result of Genuine Data and LeasingDesk's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: the loss of his ability to obtain housing, loss of sleep, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

44. The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681o.

45. Because Defendants' conduct was also willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts above. 15 U.S.C. §1681n

### COUNT TWO – DEFAMATION

46. Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein. Plaintiff asserts this claim in the alternative to his FCRA claims, to the extent the Defendants may argue that the FCRA does not apply to them.

9

47. Within the context of the foregoing allegations, Defendants each made multiple false and defamatory statements regarding the Plaintiff. Genuine Data first published that Plaintiff was a sex offender to RealPage. RealPage then published that same statement to Plaintiff's potential landlord.

48. In each statement, the Defendants identified Plaintiff by name. Each statement was also false, as Plaintiff is not a sex offender.

49. Labeling Plaintiff a sex offender was defamatory because such a label tends to lower one's reputation within the community or expose one to ridicule.

50. Defendants intended to publish the statements, and the statements were false.

51. Defendants each published the statements knowing they were false or acting in reckless disregard for the truth or falsity of the statements.

52. As a result of Defendants' conduct, actions and inactions, the Plaintiff suffered various types of damages as set forth herein, including specifically the loss of the ability to obtain housing, mental and emotional pain, anguish, humiliation and embarrassment of being inaccurately labeled a sex offender, and damage to his reputation.

53. This defamation was malicious, willful, deliberate, intentional and/or with reckless disregard for the interests and rights of the Plaintiff, so as to justify an award of punitive damages against the Defendants, Genuine Data and LeasingDesk in an amount to be determined by the Court.

WHEREFORE, Plaintiff moves for an award for actual, statutory, and punitive damages for Defendants' violations of the FCRA, as well as his attorneys' fees and costs against Defendants; for pre-judgment and post judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

Respectfully submitted,

By: /s/ Matthew S. Robertson
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Samuel E. Miller #72939
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:     (913) 371-0727
Email: aj@kcconsumerlawyer.com
           mr@kcconsumerlawyer.com
           msr@kcconsumerlawyer.com
           sm@kcconsumerlawyer.com

And

By: */s/ Leonard A. Bennett*
Leonard A. Bennett (*pro hac vice forthcoming*)
Craig C. Marchiando (*pro hac vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Email:  lenbennett@clalegal.com
Email:  craig@clalegal.com
Telephone: (757) 930-3660
Facsimile:  (757) 930-3662
***Attorneys for Plaintiff***

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiff asserts his right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ Matthew S. Robertson
Matthew S. Robertson #70442